UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 20-120 |
| STERLING ROBINSON | SECTION L (5) |

### ORDER AND REASONS

Before the Court is Defendant's Motion for Judgment of Acquittal and/or for New Trial, R. Doc. 60. The government filed an opposition, R. Doc. 64. The Court heard oral argument on February 23, 2022. Having considered the parties' arguments and the applicable law, the Court now rules as follows.

I.   BACKGROUND

On November 5, 2020, a Grand Jury charged defendant Sterling Robinson in a two-count indictment. R. Doc. 1. Count One charged Mr. Robinson with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). *Id.* at 1-2. Count One alleged that on March 13, 2020, Mr. Robinson possessed a firearm despite knowing he had been convicted of possession of a firearm in furtherance of a drug-trafficking crime in 2016. *Id.* at 1. Count Two charged Mr. Robinson with attempting to obstruct justice in violation of 18 U.S.C. § 1512(c)(2). *Id.* at 2. Count Two alleged that this obstruction of justice occurred from March 13, 2020 to October 16, 2020, when Mr. Robinson attempted to have another person provide false information about Mr. Robinson's criminal conduct. *Id.*

The incident that gave rise to these charges occurred on March 13, 2020, when Mr. Robinson allegedly shot at his girlfriend's car while she was driving away from him with her child

in the backseat. The obstruction of justice charge arose from subsequent phone calls in which Mr. Robinson allegedly tried to pressure the victim to change her story and to resist cooperating with law enforcement.

Mr. Robinson was arraigned on November 16, 2020 and pleaded not guilty. R. Doc. 13. Mr. Robinson was then ordered detained and remanded for confinement in a corrections facility. R. Docs. 14, 15. Mr. Robinson's trial was originally set for January 19, 2021 but was continued several times. R. Docs. 19, 21, 26.

A two-day jury trial began on December 6, 2021. At the trial, the government introduced audio recordings of a 911 call in which the victim reported that Mr. Robinson had just shot at her; video recordings from the responding police officer's body camera in which the victim pointed out the bullet holes in her car and said Mr. Robinson had fired the gun; text messages between the victim and Mr. Robinson referring to the incident; and audio recordings of calls Mr. Robinson made to the victim from jail, in which Mr. Robinson suggested that the victim change her story about the incident. The government also called the victim, Candace Anderson, as a witness. However, on the stand, Ms. Anderson claimed that she had mistakenly identified Mr. Robinson as the man who shot at her. Despite this testimony, which plainly contradicted the other evidence, the jury found Mr. Robinson guilty of both counts after deliberating for approximately one hour. R. Docs. 49, 49-1. Mr. Robinson moved for a judgment of acquittal during the trial, which the Court denied. R. Doc. 49.

**II.     PENDING MOTION**

Mr. Robinson has filed a motion for a judgment of acquittal or, alternatively, for a new trial. R. Doc. 60. Mr. Robinson argues there was insufficient evidence to convict him because the government's only eyewitness, Ms. Anderson, testified that Mr. Robinson was not the shooter and

did not tell her to lie, requiring the government to impeach its main witness's credibility. Mr. Robinson further argues that the police body camera footage the government used to impeach Ms. Anderson was hearsay and that the jury instruction on impeachment by prior inconsistencies was incomplete. Mr. Robinson also argues that he was prejudiced by the government's late disclosure of its expert witness on the interstate commerce nexus of the ammunition.

The government opposes the motion, arguing that the evidence was sufficient to convict Mr. Robinson and that he is not entitled to a judgment of acquittal or a new trial. The government asserts that the jury rejected Ms. Anderson's testimony and convicted Mr. Robinson based on the other evidence; that Mr. Robinson's requested jury instruction on impeachment by prior inconsistencies was not necessary; and that Mr. Robinson was not prejudiced by the expert testimony on the interstate commerce nexus.

### III. APPLICABLE LAW

#### a. *Motion for a Judgment of Acquittal Under Rule 29*

Rule 29 of the Federal Rules of Criminal Procedure provides that "[a] defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict" and that "the court may set aside the verdict and enter an acquittal" if it finds that the evidence is insufficient to sustain a conviction. FED. R. CRIM. P. 29(c). "[O]n review of the sufficiency of the evidence to support a criminal conviction . . . the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Thus, a court's review of the sufficiency of the evidence to support the jury's verdict is "highly deferential to the verdict." *United States v. Harris*, 293 F.3d 863, 869 (5th Cir. 2002). Indeed, "[a]ll reasonable inferences must be drawn, and all credibility determinations made, in the light

most favorable to the verdict." *United States v. Villarreal*, 324 F.3d 319, 322 (5th Cir. 2003). Moreover, rather than consider "each piece of evidence, standing alone," the court should evaluate the evidence "when examined in the aggregate." *United States v. Vergara*, 687 F.2d 57, 61 (5th Cir. 1982).

### b. *Motion for a New Trial Under Rule 33*

Rule 33 of the Federal Rules of Criminal Procedure provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a). If "grounded on any reason other than newly discovered evidence," the motion "must be filed within 14 days after the verdict." FED. R. CRIM. P. 33(b). While a district court's discretion to grant a new trial "is quite broad," the court "may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable." *United States v. Robertson*, 110 F.3d 1113, 1118 (5th Cir. 1997). Rather, "[t]he evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *Id.* In contrast to a motion for acquittal, when considering a motion for a new trial, "the trial judge may weigh the evidence and may assess the credibility of the witnesses." *Id.* at 1117.

### IV.    DISCUSSION

### a. *Sufficiency of the Evidence*

Mr. Robinson argues that the evidence to convict him was insufficient because the only witness to the shooting who testified, Ms. Anderson, insisted that Mr. Robinson was not the shooter and that he did not pressure her to change her story. R. Doc. 60-1 at 6. Mr. Robinson points out that the government relied on Ms. Anderson as the only eyewitness yet used other evidence to impeach her and imply she was not credible. *Id.* In response, the government argues that despite

4

Ms. Anderson's testimony, the other evidence was sufficient to convict Mr. Robinson of both counts. R. Doc. 64 at 9-10.

The Court finds that the evidence was sufficient to convict Mr. Robinson of both counts. Though Ms. Anderson, a reluctant witness who tried to avoid testifying[1], claimed Mr. Robinson did not shoot at her or persuade her to change her story, the other evidence contradicted her testimony. The government provided the jury with audio from the 911 call Ms. Anderson made immediately after the incident, in which Ms. Anderson stated that her boyfriend Sterling Robinson had shot at her. R. Doc. 58 at 121, 123. The government also provided video from the responding officer's body camera in which Ms. Anderson again identified Mr. Robinson as the shooter. *Id.* at 143, 145. The government even provided a text message exchange between Ms. Anderson and Mr. Robinson in which Ms. Anderson confronted Mr. Robinson for trying to kill her and Mr. Robinson, instead of denying it, responded "I'm about to kill myself." *Id.* at 151. Moreover, the government provided recordings of subsequent phone calls in which Mr. Robinson told Ms. Anderson "all you have to tell them people [is] . . . that wasn't him" and made other suggestions that Ms. Anderson lie to investigators about the incident. *Id.* at 185, 187-88.

This evidence provides a basis for "any rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt," as to both the firearm charge and the obstruction charge. *Jackson*, 443 U.S. 319. Thus, Mr. Robinson is not entitled to a judgment of acquittal based on insufficient evidence. Moreover, given this evidence, the Court cannot say that "it would be a

---

[1] The week before the trial, Ms. Anderson sent a fax to the Court claiming that she would not be able to testify. R. Doc. 60-2. This prompted the Court to hold a conference with Ms. Anderson right before the trial, at which Ms. Anderson said she did not want to testify but felt she had no choice. R. Doc. 58 at 31. Additionally, when the courtroom deputy swore in Ms. Anderson as a witness, her initial response was "I plead the Fifth Amendment." *Id.* at 126.

miscarriage of justice to let the verdict stand." *Robertson*, 110 F.3d at 1118. Thus, Mr. Robinson is not entitled to a new trial.

### b. *Jury Instruction on Impeachment by Prior Inconsistencies*

Mr. Robinson argues that the Court failed to provide the jury with an essential part of the Fifth Circuit's pattern jury instruction on impeachment by prior inconsistencies. The portion at issue states:

> Earlier statements of a witness were not admitted in evidence to prove that the contents of those statements are true. You may not consider the earlier statements to prove that the content of an earlier statement is true; you may only use earlier statements to determine whether you think the earlier statements are consistent or inconsistent with the trial testimony of the witness and therefore whether they affect the credibility of that witness.

Pattern Crim. Jury Instr. 5th Cir. 1.11 (2019). Mr. Robinson argues this instruction was necessary for the jury to understand that the police body camera footage, as hearsay, should not have been taken to prove that the statements in the video were true. R. Doc. 60-1 at 7. In response, the government argues that all the prior inconsistent statements used at trial were admitted under hearsay exceptions, making this instruction unnecessary because these statements could be used to prove the truth of their content. R. Doc. 64 at 11. Regarding the body camera footage specifically, the government asserts that the statements in the video were not hearsay under Federal Rule of Evidence 801(d)(1)(C), which provides that when a witness testifies at trial and is subject to cross-examination, a prior statement which "identifies a person as someone the declarant perceived earlier" is not hearsay. *Id.* at 12.

The Court finds that the jury instruction Mr. Robinson requested was not necessary. As the Court stated when ruling on this issue during the trial, the prior inconsistent statements that were admitted, including the body camera footage, all fit within hearsay exceptions and thus could be used to prove the truth of their content. R. Doc. 59 at 50-51. Ms. Anderson's statements in the

body camera footage, in which Ms. Anderson identified Mr. Robinson as the shooter, "identifie[d] a person as someone the declarant perceived earlier" and thus were not hearsay. FED. R. EVID. 801(d)(1)(C). Thus, it would have been unnecessary, and indeed misleading, to instruct the jury that witnesses' prior statements could not be used to prove the truth of their content. Therefore, the lack of this jury instruction does not entitle Mr. Robinson to a judgment of acquittal or a new trial.

    *c. Prejudice to Mr. Robinson Due to Expert Testimony on Interstate Commerce Nexus*

Mr. Robinson argues that he was prejudiced by the testimony of William Tonglet, the government's expert on the interstate commerce nexus, because the government's disclosure of Mr. Tonglet's expert report was untimely, leaving defense counsel unable to properly cross-examine him. R. Doc. 60-1 at 7-8. The government counters that Mr. Robinson was not prejudiced because, though the government's disclosure of Mr. Tonglet's report was untimely, Mr. Robinson had prior notice that the government would call an expert on this topic and the report was short and simple. R. Doc. 64 at 13.

The Court finds that Mr. Robinson was not prejudiced by this expert testimony. As the Court found when ruling on this issue at the start of the trial, though the government's disclosure of this expert report was untimely, Mr. Robinson was on notice that the government would use an expert on this topic, and the report was only one page long. R. Doc. 58 at 5-7. A month before trial, Mr. Robinson refused to stipulate to the interstate commerce element of the firearms offense—despite such a stipulation being common practice—and the government informed him that it would call an ATF agent to testify as to this element. *Id.* Thus, despite the late disclosure of the expert report, Mr. Robinson could have engaged his own expert on this issue or otherwise

7

prepared to cross-examine the government's expert. The brevity of the report indicates that it was not complicated. Therefore, there was not sufficient prejudice to Mr. Robinson to justify a judgment of acquittal or a new trial.

## V. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendant's Motion for Judgment of Acquittal and/or for New Trial, R. Doc. 60, is **DENIED**.

New Orleans, Louisiana, this 23rd day of February, 2022.

_____
UNITED STATES DISTRICT JUDGE