UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 20-120 |
| STERLING ROBINSON | SECTION L (5) |

### ORDER & REASONS

Before the Court is Defendant Sterling Robinson's *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. R. Doc. 118. The Court ordered affidavits in connection with the motion, R. Doc. 119, which were submitted. R. Docs. 120, 121, and 122. Considering the record, the motion, and the affidavits, the Court now rules as follows.

**I.  BACKGROUND**

On November 5, 2020, a Grand Jury charged Defendant Sterling Robinson in a two-count indictment. R. Doc. 1. Count One charged Mr. Robinson with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). *Id.* at 1-2. Count Two charged Mr. Robinson with attempting to obstruct justice in violation of 18 U.S.C. § 1512(c)(2). *Id.* at 2. The incident that gave rise to these charges occurred on March 13, 2020, when Mr. Robinson shot at his girlfriend, Candace Anderson, while she was driving away from him with her child in the backseat. The obstruction of justice charge arose from subsequent phone calls in which Mr. Robinson tried to pressure Ms. Anderson to change her story and to deny his involvement in the shooting incident. Mr. Robinson pleaded not guilty. R. Doc. 13.

A two-day jury trial began on December 6, 2021. At the trial, the government introduced audio recordings of a 911 call in which Ms. Anderson reported that Mr. Robinson had just shot at her; video recordings from the responding police officer's body camera in which Ms. Anderson

1

pointed out the bullet holes in her car and said Mr. Robinson had fired the gun; text messages between Ms. Anderson and Mr. Robinson referring to the incident; and audio recordings of calls Mr. Robinson made to Ms. Anderson from jail, in which Mr. Robinson urged her to change her story about the incident. The government also called Ms. Anderson as a witness. However, on the stand, Ms. Anderson claimed that she had mistakenly identified Mr. Robinson as the man who shot at her. Despite this testimony, which plainly contradicted the other evidence, the jury found Mr. Robinson guilty of both counts. R. Docs. 49, 49-1.

## II.    PENDING MOTION

Mr. Robinson has now filed a petition to vacate his sentence pursuant to 28 U.S.C. § 2255. Mr. Robinson's filing consists of a form § 2255 petition and an attached memorandum in support. R. Doc. 118-1. In his form petition, he has input background information and only alleges, as grounds for relief, that "Counsel Samuel J Scillitani rendered ineffective assistance in the eventual rejection of a plea offer made by the government, which without such faulty omission the movant would have accepted the proposed plea." *Id.* at 4. In his memorandum in support, Mr. Robinson further explains his claim. R. Doc. 118-2. First, Mr. Robinson alleges that Mr. Scillitani "did not advise the movant of the potential for an acceptance of responsibility reduction" during the plea-bargaining process. *Id.* Second, he alleges that while he was represented by Mr. Scillitani there was a "plea negotiation in progress where an offer was made." *Id.* at 4. However, he avers that Mr. Scillitani then withdrew from the case, leaving the offer "in limbo." *Id.* Mr. Robinson alleges that Mr. Scillitani "failed to communicate such negotiations to attorney Karl Ludwig," who replaced Mr. Scillitani as trial counsel. *Id.* at 4-5. Mr. Robinson argues that the plea negotiation then stayed "in suspense, in addition to unpreparedness to conduct a soon to be trial." *Id.* at 5.

Mr. Robinson's motion was initially rejected by the Clerk's Office for failure to sign his pleadings. R. Doc. 117. He then appears to have re-sent only the last page of his form petition, with his signature added on the signature block, as well as the original unsigned documents. R. Doc. 118.

Thereafter, the Court ordered affidavits from the AUSA who prosecuted the case, Maurice Landrieu, as well as from Mr. Scillitani and Mr. Ludwig. R. Doc 19. All parties submitted the requested affidavits. *See* R. Docs. 120, 121, and 122. All three attorneys aver that the only *official* plea offer made by the Government was to plead guilty as charged and to cooperate with the Government in relation to the investigation of a separate homicide in Jefferson Parish in which Mr. Robinson was a suspect. *Id.* Mr. Scillitani and Mr. Ludwig both maintain that they advised Mr. Robinson of the offer to plead guilty as charged but that Mr. Robinson had no interest in pleading. R. Doc. 121 at 1; R. Doc. 122 at 1.

Mr. Scillitani further explains that the Government also reached out with "preliminary thoughts" regarding a potential "global plea agreement." which would have included both a plea to the instant charges *and* a plea to the homicide pending in Jefferson Parish. *Id.* Those "preliminary thoughts" also included a "proposed 25-year plea in each jurisdiction to run concurrently." R. Doc. 121 at 1. However, Mr. Scillitani avers "Mr. Robinson denied any participation in the Jefferson Parish homicide" and "maintained his intention to proceed to trial on the charged offenses." *Id.*

Finally, Mr. Scillitani also represents that it is his "standard practice" to prepare "multiple calculations" of the Guidelines for his clients, including "a calculation assuming the defendant receives acceptance of responsibility" and "a separate calculation excluding acceptance of responsibility." *Id.* at 2.

### III. LEGAL STANDARD

Mr. Robinson claims that his conviction should be vacated based on Counsel's failure to communicate plea negotiations and failure to advise him of a potential sentence reduction for acceptance of responsibility. Claims for ineffective assistance of counsel are governed by the two-prong test set forth in *Strickland v. Washington*, which requires the movant to demonstrate: (1) constitutionally deficient performance by counsel, and (2) actual prejudice as a result of such ineffective assistance. 466 U.S. 668, 687 (1984). The "deficiency" prong requires a showing that counsel's performance fell below an objective standard of reasonableness as measured by professional norms, such that counsel was not functioning as counsel guaranteed by the Sixth Amendment. *Id.* Under the "prejudice" prong, the petitioner must demonstrate, to a reasonable probability, that the result of the proceedings would have been different but for the alleged conduct, or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995); *see also Strickland*, 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

### IV. DISCUSSION

The Court first addresses whether it must hold an evidentiary hearing on Mr. Robinson's motion. Ultimately, the Court finds that such hearing is unnecessary. The Court then proceeds to address the merits of the motion.

**A. An Evidentiary Hearing is Unnecessary.**

Overall, the Court finds that an evidentiary hearing is not necessary under the facts of this particular case. Generally, a district court may deny a § 2255 motion without holding an

evidentiary hearing "only if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992).

However, where the petitioner's allegations are "unsworn, inconsistent, and lacking in detail" the district court may decide the motion without an evidentiary hearing. *United States v. Nkuku*, No. 16-20558, 2017 WL 11812985, at *2 (5th Cir. July 7, 2017). For example, in *United States v. Nkuku*, the Fifth Circuit affirmed the district court's dismissal of a § 2255 motion without evidentiary hearing where the petitioner claimed ineffective assistance of counsel based on his attorney's alleged failure to convey the government's plea offer or advise him of a potential acceptance of responsibility reduction. *Id.* The court reasoned:

> [Petitioner's] critical allegations—the allegations in his section 2255 memorandum and post judgment motion—are unsworn. He declared under penalty of perjury that his section 2255 motion was true and correct, but his attached memorandum did not contain a similar declaration . . . Unsworn allegations do not provide independent indicia of the likely merit of a claim.

*Id. (citing United States v. Gonzalez*, 493 F. App'x 541, 544 (5th Cir. 2012)). Further, the court observed that the petitioner's inaccurate timeline of events regarding the plea-bargaining process and trial "casts doubt on the plausibility of his allegations." *Id.* Finally, the court observed that the petitioner "did not supply many details in support of his claim that counsel failed to convey the terms of the [plea] offer and terminated the plea negotiations . . . A hearing is not warranted when the defendant does not offer detailed and specific facts surrounding his allegations." *Id.* (citing *United States v. Smith*, 915 F.2d 959, 964 (5th Cir. 1990)).

Here, similarly, Plaintiff has failed to swear to the facts alleged in his memorandum in support. *See* R. Doc. 118-2. Initially, he did not sign any portion of either his form petition or his memorandum in support. *See* R. Doc 17. After his motion was rejected by the Clerk's Office, he re-sent only an extracted page of his form petition, with his signature added to the signature block.

However, his re-attached memorandum in support, which contains his factual allegations, is still not signed nor sworn. *See* R. Doc. 118-2.

Further, Mr. Robinson's alleged timeline is not entirely consistent with the facts of this case. He alleges that when Mr. Scillitani withdrew from the case, he left the plea negotiations "in limbo" and that "by failing to communicate such negotiations to attorney Karl Ludwig, right before trial, the plea negotiations stayed in suspense, in addition to unpreparedness to conduct a soon-to-be trial." R. Doc. 118-2 at 5. However, in fact, Mr. Scillitani withdrew on June 8, 2021 and was replaced by Mr. Ludwig on that same date. R. Doc. 24. Mr. Robinson's trial did not commence until December 6, 2021, approximately six months later. R. Doc. 48. Accordingly, the timeline between Mr. Scillitani's withdrawal and the trial was not as short as Mr. Robinson suggests. Mr. Ludwig would have had adequate time to familiarize himself with the case and confer with the Government regarding the status of the plea bargaining. In fact, Mr. Ludwig avers in his affidavit that the Government independently "confirmed that the only offer was to plead guilty as charged" and that he communicated this offer to Mr. Robinson. R. Doc. 122 at 1.

Furthermore, as in *Nkuku*, Petitioner does not provide any details as to his conversations with Mr. Scillitani nor Mr. Ludwig. He merely asserts in a conclusory manner that Mr. Scillitani left the plea negotiations "in limbo" and "did not advise the movant of the potential for an acceptance of responsibility reduction." R. Doc. 118-2 at 6. These conclusory allegations are not "detailed and specific facts" such as to warrant a hearing. *Nkuku*, 2017 WL 11812985, at *2

Finally, and most fundamentally, the Court notes that an evidentiary hearing is more helpful where the presiding judge has not had the opportunity to assess the petitioner's credibility during trial. *See United States v. Arguellas*, 78 F. App'x 984, 987 (5th Cir. 2003) ("[B]ecause . . . the district court had no occasion to observe [petitioner's] credibility during trial or otherwise, a

6

live evidentiary hearing is necessary."). Here, however, this Court presided over Mr. Robinson's trial and has already had an opportunity to form an opinion as to his credibility and truthfulness. Overall, the Court's opinion of Mr. Robinson's credibility is unfavorable. At trial, the Government presented recordings of phone calls in which Mr. Robinson encouraged Ms. Anderson to lie about his shooting at her, telling her, "all you have to tell them people [is] . . . that wasn't him" among various other statement. R. Doc. 58 at 185; 186-208. The jury ultimately convicted Mr. Robinson of obstruction of justice based on this "attempt to corruptly obstruct, influence, and impede an official proceeding by getting [Candace Anderson] to provide false information" concerning his criminal conduct in the March 13, 2020 incident. R. Docs. 1, 48.

Overall, given Mr. Robinson's failure to swear to his allegations in the memorandum in support, the conclusive nature of the allegations, their inconsistency with the timeline of the case, and the Court's prior opportunity to form an opinion of Mr. Robinson's credibility at trial, the Court finds that Mr. Robinson's motion is insufficient to raise a genuine fact issue requiring an evidentiary hearing. Further, although not dispositive, the Court notes that Mr. Robinson is incarcerated in Coleman, Florida some distance away from the Eastern District of Louisiana. The Court does not believe that transporting Mr. Robinson from this distance for a live evidentiary hearing would be a prudent use of resources given the factors explained above.

### B. The Court Will Deny Mr. Robinson's Petition.

For essentially the same reasons, the Court will deny Mr. Robinson's § 2255 petition. Mr. Robinson makes two arguments in support of his motion. Neither is persuasive. First, he argues that Mr. Scillitani's withdrawal in June of 2021 left plea negotiations "in limbo" resulting in the "eventual rejection" of a plea. Second, he avers that Counsel failed to advise him of the potential for an acceptance of responsibility reduction for pleading guilty. The Court examines each in turn.

7

First, Mr. Robinson's argument that the plea bargaining was left "in limbo" when Mr. Scillitani withdrew is belied by the consistent affidavits of Mr. Landrieu, Mr. Scillitani, and Mr. Ludwig, all of whom aver that the only plea offer officially made by the Government was to plead guilty as charged. R. Docs. 120, 121, and 120. Mr. Scillitani and Mr. Ludwig both attest that they advised Mr. Robinson about this offer but that he refused it. R. Doc. 121 at 1; R. Doc. 122 at 1. The Court credits the consistent representations of Mr. Landrieu, Mr. Scillitani and Mr. Ludwig.

To the extent that Mr. Robinson alternatively alleges that the offer left "in limbo" was the Government's preliminary negotiations regarding a "global" plea to both the instant case and the Jefferson Parish homicide, such argument fails at the second prong of *Strickland*. To succeed on an ineffective assistance of counsel claim, the petitioner must prove that "actual prejudice as a result of such ineffective assistance." *Strickland*, 466 U.S. at 687. Here, Mr. Scillitani explains that the possible global plea floated by the Government would have involved a sentence of 25 years as to each crime. R. Doc. 121 at 1. Here, Mr. Robinson is currently serving a sentence of only 20 years on the instant charges, and he does not allege that he ever faced any charges for the Jefferson Parish homicide. R. Doc. 113. Accordingly, because Mr. Robinson's present sentence is actually lower than his sentence would have been under the possible global plea, his claim fails to demonstrate actual prejudice.

Finally, Mr. Robinson also alleges that Mr. Scillitani failed to advise him of a potential sentence reduction he could earn for acceptance of responsibility by pleading guilty. However, Mr. Scillitani refutes this allegation, advising that it is his "standard practice" to prepare "multiple calculations" of the Guidelines for his clients, including "a calculation assuming the defendant receives acceptance of responsibility" and "a separate calculation excluding acceptance of responsibility." R. Doc. 121 at 2. Mr. Scillitani is an experienced Federal Public Defender who has

spent twenty-seven years representing criminal defendants in this District. *Id.* at 1. The Court credits Mr. Scillitani's assertion that he advised Mr. Robinson regarding acceptance of responsibility. As already explained, Mr. Robinson (1) does not swear to his allegation the Mr. Scillitani failed to advise on acceptance of responsibility (2) provides no factual detail in support of the assertion, such as details of his conversations with Mr. Scillitani, and (3) is not a credible movant given that he was found guilty of obstructing justice by attempting to convince the victim in this case to lie about his involvement in the shooting underlying these charges.

### V. CONCLUSION

For the forgoing reasons,

**IT IS ORDERED** that Mr. Robinson's motion to vacate, R. Doc. 118, is **DENIED.**

New Orleans, Louisiana, this 16th day of May, 2025.

_____
UNITED STATES DISTRICT JUDGE